# Constitutionality of Federal Government Efforts in Contracting With Women-Owned Businesses

This statement presents the Justice Department's views on the federal government's efforts to contract with women-owned businesses in a manner consistent with the Constitution and federal statutes. Because the Justice Department's position on federal contracting programs that employ gender preferences is based on constitutional and legal standards that are not specific to the program addressed by the recently published Small Business Administration rule, the statement focuses on the legal standards that govern the Department's approach to such programs generally.

January 16, 2008

TESTIMONY BEFORE THE HOUSE COMMITTEE ON SMALL BUSINESS

Thank you Chairwoman Velazquez, Ranking Member Chabot, and Members of the Committee for the opportunity to appear here today to discuss the Justice Department's views on the federal government's efforts to contract with women-owned businesses in a manner consistent with the Constitution and federal statutes.

One of the most recent developments in this area is the Small Business `Administration's ("SBA's") publication of a proposed rule implementing the Women-Owned Small Business ("WOSB") Federal Contracting Program authorized by Public Law 106-554. That particular rule is addressed in SBA Administrator Preston's testimony before the Committee. For that reason, and because the Justice Department's position on federal contracting programs that employ gender preferences is based on constitutional and legal standards that are not specific to the program addressed by the recently published SBA rule, I will focus on the legal standards that govern the Department's approach to such programs generally.

As Administrator Preston testified and the Committee is aware, the federal government has taken a number of measures to increase the participation of women-owned small businesses in federal government contracting. Most of these efforts assist women-owned small businesses by improving their ability to compete with other small businesses for federal contracts, not by shielding them from such competition through gender-based restrictions on bidding opportunities. That said, one form of agency assistance that is authorized, though not required, by federal statute is the reservation, or set-aside, of certain contracts for competition only by "small business concerns owned and controlled by women." 15 U.S.C. § 637(m)(2). Federal agencies that employ such set-asides in their contracting programs must engage in gender discrimination among potential contract recipients because the set-asides require the contracting agencies to exclude otherwise qualified businesses from competing for certain contracts based solely on the degree to which those businesses are owned or controlled by men.

To be constitutional, federal programs that discriminate on the basis of gender in awarding government contracts must pass muster under the equal protection

component of the Due Process Clause of the Fifth Amendment. *See United States v. Virginia*, 518 U.S. 515 (1996) ("*VMI*"); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723–24 (1982). The Justice Department's position on gender-based contracting programs necessarily reflects this constitutional requirement because the Department, like the rest of the Executive Branch, must construe and implement federal laws in a constitutional manner. The Department's position on gender-based contracting programs also reflects Supreme Court opinions and other federal cases applying the Constitution's equal protection requirements to such programs, because these are the cases that courts will consider in deciding whether specific agency WOSB programs are constitutional. The Department's general position on these matters serves as the basis for the Department's administration of its own programs, as well as for any guidance the Department may provide to other agencies.

The level of scrutiny that a government contracting program must satisfy in order to comply with equal protection depends on the type of preference at issue. Preferences, such as veterans' preferences, that do not depend on a recipient's race or gender are subject to rational basis scrutiny, which means courts will generally uphold them as constitutional if the government can demonstrate a rational basis for adopting them. Preferences that are based on a recipient's race or gender are subject to higher levels of constitutional scrutiny. Race-based preferences must satisfy "strict scrutiny," which means that the government must prove that the specific preference at issue is "narrowly tailored" to serve a "compelling government interest." Gender-based preferences must satisfy "intermediate" or "heightened" scrutiny, which the Supreme Court has identified as considerably more demanding than rational basis scrutiny, but distinct from the strict scrutiny the Court applies to government preferences based on race.

In *VMI*, the 1996 case in which the Supreme Court considered the constitutionality of a government program that discriminated on the basis of gender, the Court emphasized that its decision to apply intermediate scrutiny did not excuse the government from establishing an "exceedingly persuasive" justification for the program. Noting the "strong presumption that gender classifications are invalid," Justice Ginsburg's opinion for the Court explained that "skeptical scrutiny of official action denying rights or opportunities based on" a person's gender is necessary to ensure that government programs, no matter how well-intentioned, do not violate the hard-fought line of equal protection precedents rejecting the notion that an individual's opportunity to "participate in and contribute to" a particular field should depend on that individual's gender. Accordingly, the Court held that to justify a gender-based preference program under intermediate scrutiny, the government bears the burden of showing, through evidence that is "genuine" and "not hypothesized or invented *post hoc*," "at least that the [program] serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" 518 U.S. at 532–33.

It bears mention that at least one court—the Seventh Circuit in an opinion by Judge Posner—has questioned whether there is any meaningful practical difference between the exacting intermediate scrutiny standard the Supreme Court articulated in *VMI* and the strict scrutiny the Court applies to racial preferences. *See Builders Ass'n of Greater Chi. v. Cnty. of Cook*, 256 F.3d 642, 644 (7th Cir. 2001). Whether or not this opinion raises a valid practical question, the Justice Department, like the majority of federal courts, adheres to the Supreme Court's determination in *VMI* that there is a distinction between intermediate and strict scrutiny.

Federal courts applying this distinction to government programs for women-owned businesses have construed the "important governmental interest" aspect of intermediate scrutiny to mean that some degree of discrimination must have occurred in the economic sphere in which the program is administered in order for the government to justify the program's constitutionality. The cases upholding gender-based preference programs under this standard emphasize the importance of the government's proof of such discrimination. Similarly, the cases invalidating programs as unconstitutional under this standard emphasize the government's failure to present evidence of discrimination in the economic sphere to which the preference program is directed.

Although strict scrutiny also requires the government to prove discrimination in justifying racial preference programs, the federal courts' focus on the government's ability to prove discrimination in gender cases does not erase the distinction between strict and intermediate scrutiny. The Eleventh Circuit has explained this distinction as follows: "While there is a difference between the evidentiary foundation necessary to support a race-conscious affirmative action program and the evidentiary foundation necessary to support a gender preference, that difference is one of degree, not of kind. In both circumstances, the test of the program is the adequacy of evidence of discrimination, but in the gender context less evidence is required." *Eng'g Contractors Ass'n v. Metro. Dade Cnty.*, 122 F.3d 895, 901 (11th Cir. 1997).

Determining exactly how much evidence of discrimination is needed to support a gender-based, as opposed to race-based, preference program is, in the Eleventh Circuit's words, a "difficulty" that all government entities face in considering whether gender-based preference programs are constitutional. Federal cases upholding such programs do not generally distinguish between the evidence required to satisfy strict versus intermediate scrutiny in a way that readily allows the government to determine that a particular study or other evidence of discrimination clearly goes far enough to justify a program under intermediate scrutiny, but does not go so far as to satisfy unnecessarily the requirements of strict scrutiny. What is clear from the cases is that mere findings of disparity or under-representation are generally not sufficient to establish the constitutionality of a gender-based preference program, and that courts are likely to strike down such

programs if the government cannot show genuine and non-hypothetical evidence of discrimination in the economic sphere in which the program will operate.

The Justice Department's position on gender-based set-aside programs reflects these cases and the simple lesson they offer federal entities considering such programs: if those entities, which must establish and administer gender-based set-asides in a constitutional manner, wish to maximize the chances that a particular program will survive constitutional scrutiny, it is both legally appropriate and legally prudent to require evidence of discrimination before implementing the program. This position accords with the requirement that the federal government administer all federal programs, including those benefiting women, in a constitutional manner, consistent with Supreme Court and other federal judicial precedents evaluating gender-based preference programs under intermediate scrutiny.

ELIZABETH P. PAPEZ
*Deputy Assistant Attorney General*
*Office of Legal Counsel*